UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KYONG OK YU, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FIVE BOARS, LLC., *et al.*,<br><br>　　　　Defendants. | Case No. C17-1249-JPD<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

I.     INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court upon plaintiffs Kyong Ok Yu and Un Nam Yu's ("plaintiffs" or "Mr. and Mrs. Yu") motion for partial summary judgment, Dkt. 49, which defendants Five Boars, LLC, Eun Kyu Kim, and Chu Hang Kim ("defendants" or "Mr. and Mrs. Kim") oppose. The Court, having considered the parties' submissions, the argument of counsel at oral argument on August 29, 2018, the Court's previous Order granting plaintiffs' motion to admit as facts certain statements based on defendants' failure to respond to the request for admissions, the governing law, and the balance of the record, hereby ORDERS that plaintiffs' motion for partial summary judgment, Dkt. 49, is GRANTED IN PART and DENIED IN PART.

ORDER- 1

## II.  DISCUSSION

A. <u>Summary of Admitted Facts Pursuant to the Court's Order Dated August 28, 2018</u>

On July 19, 2018, plaintiffs moved the Court to admit as facts certain statements based on defendants' failure to respond to the request for admissions pursuant to Fed. R. Civ. P. 36. Dkt. 53. *See also* Dkt. 54 (Park Decl.). Defendants failed to respond to plaintiffs' motion, or the request for admissions. Accordingly, on August 28, 2018, the Court granted plaintiffs' motion, and deemed the facts admitted. Dkt. 66. Thus, the following facts have been admitted in this case pursuant to the Court's Order:

Defendants Eun Kyu Kim and Chu Hwang Kim ("Mr. and Mrs. Kim") have owned the Seal's Motel, located at located 12035 Aurora Ave N, Seattle, WA 98133, since September 2006 when they purchased it for $2.25 million, until they sold it to a third party on or about August 2, 2016. The motel has approximately 38 rooms, and is more than fifty years old. Defendant Five Boars, LLC, which was entirely owned and managed by Mr. and Mrs. Kim, operated the business of the Seal's Motel, while the Kims own the real property. Five Boars, LLC dissolved in 2016.

Seal's Motel is located on the "Aurora corridor," with a cluster of nearby inexpensive motels which are mostly independently owned and operated. In addition to travelers, tourists, and out of state visitors, Seal's Motel customers regularly included long-term customers who often stayed more than one month, transients, and homeless persons who were supported by churches or governmental agencies. Over the years, the motel has had difficulties with prostitutes, drug users, and transients.[1]

---

[1] For example, a dead woman was found at Seal's Motel in December 2013, who police suspect died as a victim of foul play or crime. Seattle Police shot and killed a knife-armed man

Before hiring the Yus, the Kims worked at the Seal's Motel's front office as owner-operators and also performed the duties of motel clerk or receptionist, room cleaner, and handyman. While staffing the reception desk at the motel, defendants admitted customers at all hours, including from 10 p.m. to 8 a.m., and were awakened by customers ringing the buzzer or knocking on the doors numerous times. Thus, defendants knew that motel customers would regularly knock on the front office door between 10 p.m. to 8 a.m. to awaken the employee staying next to the front office for various concerns. Defendants had posted the minimum wage and the overtime wage requirements poster in the laundry room below the employee quarter next to the Seal's Motel's front office, reflecting their understanding that they were required to pay the minimum wage and overtime wage to their motel employees.

In September 2010, defendants hired Mrs. Yu, who is Mr. Kim's cousin, as a motel employee. She worked at the motel from 2010 to July 2016. Mrs. Yu worked primarily as a Seal's Motel's front office receptionist admitting and discharging the motel customers, collecting room charges, making room availability reports, making room cleaning reports, cleaning motel rooms, doing laundry of motel linens, and ordering motel supplies. Mrs. Yu and her husband, Mr. Yu, stayed in the living quarters next to the Seal Motel's front office. Mrs. Yu admitted Seal's Motel's customers at any time of the day or night as needed, and took care of customers' issues, security issues, and problems of the motel at any time. Defendants were aware that Mrs. Yu rented out motel rooms to walk-in customers from 10 p.m. to 8 a.m. the following morning, based upon the revenues received from these transactions. Defendants

---

at the motel in January 2009. The motel was temporarily shut down by Washington State Department of Health on or about June 2008 due to safety issues, including broken smoke detectors, soiled mattresses, exposed electrical wiring, and drug paraphernalia found in the motel rooms.

ORDER- 3

never made any attempt to stop Mrs. Yu from working between the hours of 10 p.m. to 8 a.m., or had any written policy (or initiated negative employment action) to discourage Mr. and Mrs. Yu from working overnight.  On the contrary, the motel's front office had an electric buzzer for customers to ring for an employee to assist them after-hours.

Defendants reported to the Washington State Employment Security Department and/or Department of Labor and Industries that Mrs. Yu worked 160 hours per month for Seal's Motel, for the employment period 2013 to 2016.  Defendants paid her a fixed salary, excluding taxes, of $2,000 in check plus $2,000 in cash, or a total of $4,000.00 per month.[2]  Thus, based on their claims of hours worked and salary paid, Mrs. Yu's regular hourly wage was $25.00 per hour ($4,000 divided by 160 hours).  Defendants did not have a time clock to record the actual hours worked by the employees of Seal's Motel, and they did not record the actual hours worked by plaintiffs.

While Mrs. Yu was employed at the Seal's Motel, she was not a professional employee with a professional license, an executive employee, an administrative employee, or otherwise involved in the hiring/firing of employees, bookkeeping, accounting, tax reporting, payroll accounting, payroll check writing, vendor payments, or other administrative works.  Rather, Mr. and Mrs. Kim performed the hiring and firing of the employees, the bookkeeping, accounting, tax reporting, payroll accounting, payroll check writing, vendor payments, and other administrative works, in conjunction with the accountant.

---

[2] Defendants did not pay taxes (including social security taxes) on behalf of Mrs. Yu for the cash portion of the wages paid to her.

ORDER- 4

Plaintiff Un Nam Yu ("Mr. Yu") was employed by defendants at the motel from 2013 to 2016. Mr. Yu worked primarily as the Seal's Motel's handyman or front office receptionist (admitting and discharging the motel customers). As needed, he collected room charges, cleaned motel rooms, laundered motel linens, cleaned the motel parking lots, did security checks of the motel, and resolved issues with motel customers. Mr. Yu was an hourly worker rather than a salaried worker. Defendants reported to Washington State Employment Security Department and/or Department of Labor and Industries that Mr. worked 80 hours per month between December 1, 2013 and December 31, 2015, and 70 hours per month between January 1, 2016 and July 31, 2016.[3]

Mrs. Yu worked more than eight hours per day, for the each day she worked for Seal's Motel, and more than forty hours per week for the years 2013-2016. However, defendants did not pay Mrs. Yu any overtime wage for the years 2013-2016. Mr. Yu also worked more than eight hours per day, and more than forty hours per week, for the years 2013-2016, without payment of any overtime wages by defendants.

B. <u>Summary Judgment Standard</u>

The Court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court does not weigh evidence to determine the truth of the matter

---

[3] Defendants did not pay taxes (including social security taxes) on behalf of Mr. Yu for the cash portion of the wages paid to him.

but instead "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994).

The Court draws all reasonable inferences in favor of the non-moving party. *Mattos v. Agarano,* 661 F.3d 433, 439 (9th Cir. 2011) (en banc). Nonetheless, the non-moving party must make a "sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence" is not enough. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

C. <u>Plaintiffs' Motion for Partial Summary Judgment</u>

1. *FLSA's Administrative Employee Exemption is Not Applicable to Mrs. Yu*

Plaintiffs move the Court to grant an order for partial summary judgment, alleging that there are no genuine issues of material fact in dispute regarding plaintiffs' claims that Mrs. Yu was a non-exempted hourly wage employee under the Fair Labor Standards Act ("FLSA"), and that both Mr. and Mrs. Yu are entitled to payment for the overtime hours they worked at the Seal's Motel. Dkt. 29 at 2. Plaintiffs allege that they are entitled to judgment as a matter of law because defendants violated the FLSA by failing to pay overtime wages to Mrs. Yu by incorrectly categorizing her as an exempt salary worker, by failing to pay overtime wages to Mr. Yu, and for breaching their promises for payment of post-termination compensation. *Id.*[4]

---

[4] Plaintiffs contend that issues to be resolved at time of trial on September 24, 2018 include (1) actual amounts of damages of unpaid overtime wages and/or unpaid minimum wages; (2) whether defendants willfully failed to pay the overtime or minimum wages to defendants (thus extending the status of limitations to three years, allowing plaintiffs liquidated damages); and (3) whether defendants breached their oral promises to purchase a restaurant in the amount of $300,000 for the plaintiffs.

Defendants respond that Mrs. Yu was employed as the manager of the Seal's Motel, and that her primary duty was assisting in the management and operation of the motel. Dkt. 55 at 3. Specifically, defendants claim that Mrs. Yu operated with little supervision, supervised and directed the work of the motel housekeeping and maintenance, created lists of necessary supplies and ordered them for the motel. *Id*. Mrs. Yu had the authority to determine whether a customer was allowed to stay at the motel or not, including whether they could stay prior to making a payment. She earned a monthly salary of $4,000.00, which substantially exceeded the compensation of other motel employees. *Id.* By contrast, defendants assert that Mr. Yu was salaried worker who performed minor maintenance work and housekeeping services, but had no other duties. Defendant claim that although having customers come to the door of the motel between 11 p.m. and 9 a.m. did occur, it was very infrequent. *Id*. at 4. Defendants argue that plaintiffs' request for summary judgment should be denied because the FLSA exempts several categories of employees from the overtime pay requirement, and Mrs. Yu was an employee who fell into one of these exempt categories.

Defendants are incorrect. The FLSA generally requires employers to pay their employees time and a half for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). However, the FLSA exempts several categories of employees from the overtime pay requirement, including "any employee employed in a bona fide . . . administrative . . . capacity." 29 U.S.C. § 213(a)(1). Defendants have the burden of proving this exemption applies, and it is construed narrowly against them. *Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1124–25 (9th Cir. 2002).

The FLSA does not define "employed in a bona fide . . . administrative . . . capacity," instead delegating that task to the Secretary of Labor. 29 U.S.C. § 213(a)(1). The Secretary

ORDER- 7

has promulgated a three-pronged definition of the administrative exemption. Under this definition, administrative employees are workers (1) who are "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week"; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

The Court finds that, although Mrs. Yu was compensated more than $455 per week, the admitted facts in this case do not establish that Mrs. Yu's primary duty at Seal's Motel was the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and"[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

With respect to the first definition of administrative work, *i.e.,* work "directly related to the management or general business operations of the employer," the Administrator further defines such work as "assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). The "essence" of this definition is "the running of the business, and not merely . . . the day-to-day carrying out of its affairs." *Bratt v. County of Los Angeles,* 912 F.2d 1066, 1070 (9th Cir. 1999) (internal quotation marks omitted). As the Administrator has explained:

> [w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

ORDER- 8

29 C.F.R. § 541.201(b).

This Court has previously observed that "[t]his list distinguishes between work that any employer needs performed—such as accounting, human resources, and regulatory compliance—and work that is particular to an employer's industry . . . The former is part and parcel of running a business and therefore exempt administrative work. The latter is not." *Bollinger v. Residential Capital, LLC*, 863 F. Supp.2d 1041, 1048 (W.D. Wash. 2012).

Under this framework, the Court finds that Mrs. Yu's duties at Seal's Motel were not administrative in nature. "[E]xempt administrative work is about running a business, not implementing its day-to-day operations." *Bollinger*, 863 F.Supp.2d at 1049 (*quoting Bratt,* 912 F.2d at 1070). Mrs. Yu implemented the motel's day to day operations, which involved a variety of duties, but she was not running the business. Although when she was staffing the motel front desk she had the discretion to grant or deny customers a motel room, this was also true of any other employee staffing the front desk, and defendants have not provided evidence that her primary duties included the exercise of discretion and independent judgment with respect to matters of significance. As set forth above in the summary of admitted facts, Mrs. Yu was not employed as a professional employee, an executive employee, an administrative employee, or otherwise involved in the hiring/firing of employees, bookkeeping, accounting, tax reporting, payroll accounting, payroll check writing, vendor payments, or other administrative works. Rather, Mr. and Mrs. Kim performed the "administrative" functions of running the motel themselves, such as the hiring and firing of the employees, the bookkeeping, accounting, tax reporting, payroll accounting, payroll check writing, vendor payments, and other administrative works, in conjunction with the accountant.

Accordingly, despite the fact that Mrs. Yu received higher pay than the other motel employees, Mrs. Yu's duties at the Seal's Motel did not trigger the administrative exception to FLSA's overtime pay requirements. Defendants also do not meaningfully contest Mr. Yu's claims that defendants owe him overtime pay for his work at the Seal's Motel. Plaintiffs' motion for summary judgment on their FLSA claims for overtime pay is therefore GRANTED. The remaining issues to be resolved at time of trial, which respect to plaintiffs' FLSA claims, are (1) amounts of damages of unpaid overtime wages and/or unpaid minimum wages, and (2) whether defendants willfully failed to pay the overtime or minimum wages to defendants.

2.  *Plaintiffs' Motion for Summary Judgment on their Claims for Post-Termination Compensation of $30,000, Three Months of Rent, and Security Deposit is Denied*

Plaintiffs also move for summary judgment on their claims that defendants promised them post-termination benefits including $30,000 in cash following the sale of the motel, as well as three months rent for a new apartment plus a security deposit. Dkt. 29 at 2. Specifically, plaintiffs claim that in early August 2015, after Mr. Yu was assaulted by a drunk customer of the motel in the parking lot, the plaintiffs wanted to quit their jobs. Sensing their dissatisfaction, defendants made several promises to the plaintiffs to convince them to keep working there, including a promise to purchase plaintiffs a restaurant worth $300,000 and to pay them an additional $30,000 in cash after the motel was sold. Dkt. 49 at 9. Plaintiffs allege that, as part of their termination benefits when the motel was sold to a buyer on August 2, 2016 for $3.8 million, Mrs. Kim also told plaintiffs that she was willing to pay for three months of the plaintiffs' rent plus a security deposit for a new apartment. Dkt. 49 at 11. When the plaintiffs asked for the promised $30,000 in cash in mid-August 2016, after the motel had been sold, the defendants told them that they did not have the money on hand because the

defendants had purchased an apartment complex in Lakewood and the motel sale proceeds were tied up in the 1031 exchange. At that point, according to plaintiffs, the parties' relationship had deteriorated and defendants demanded that plaintiffs move out of their Spanaway house.

Defendants assert that although they first received an offer to sell the Seal's Motel in 2014, they did not accept it or discuss the potential sale (or make any related promises) to Mr. and Mrs. Yu. *Id.* In 2016, they received another offer, which they did accept. Defendants assert that while finalizing the sale, they discussed with Mr. and Mrs. Yu the possibility of assisting them with opening a restaurant, which might include Mr. and Mrs. Kim purchasing property and assisting Mr. and Mrs. Yu with setting up business operations by providing them a loan. Alternatively, they discussed a scenario in which the Kims would purchase an ongoing restaurant business, which Mr. and Mrs. Yu could operate as a source of income, making payments to the Kims until the Yus eventually purchased the restaurant. *Id.* Although they visited a potential property in Bremerton, Washington, where Mrs. Yu mentioned she would like to open a coffee shop, defendants assert that the soil turned out to be contaminated and therefore the Kims did not purchase the property. *Id.* at 6. The Kims claim that they did not make any promises to simply buy restaurant property and hand it over to the Yus.

After the sale of the motel, Mr. and Mrs. Yu moved into the defendants' home in Spanaway, Washington, with the understanding that the plaintiffs could live in that home for one year Dkt. 55 at 6. According to defendants, after the Kims declined to purchase the Bremerton property, they told Mr. and Mrs. Yu that if plaintiffs found a business to purchase, the Kims would assist them with paying necessary operating expenses up to $30,000, and the Yus would need to obtain a loan for the remainder. Defendants assert that their offer of

ORDER- 11

$30,000 was contingent upon the Yus finding a restaurant they wished to purchase themselves and obtaining their own loan for the remainder of the cost.[5] Defendants claim that when Mrs. Yu learned she would not receive the $30,000 cash immediately following the sale of the motel, she was angry and told the Kims that she did not want the money in any event. Mrs. Kim also offered to assist Mr. and Mrs. Yu with obtaining an apartment by paying several months rent and a security deposit, but the Yus rejected that offer too. Mr. and Mrs. Yu then voluntarily moved out of the Kim's Spanaway home.

Defendants argue that plaintiffs are not entitled to the $30,000, or the value of three months of rent plus a security deposit, as there was never any oral agreement reached between the parties that the defendants would gift plaintiffs $30,000 in cash, three months rent, and a security deposit. *Id*. at 9. In fact, Mrs. Yu stated that she did not want their money. Thus, defendants argue that summary judgment on these remaining issues is not appropriate.

Plaintiffs' motion for partial summary judgment on the remaining issues is DENIED. The parties have differing accounts of what promises regarding post-termination benefits were made, and when, and have provided competing declarations. *Compare* Dkt. 43 (Un Nam Yu Decl.) at ¶ 23 ("Mr. and Mrs. Kim approached us and made promises . . . that the Kims will purchase a restaurant worth $300,000 for us and pay additional $30,000 in cash to us after the Motel was sold"); Dkt. 44 (Kyong Ok Yu Decl.) at ¶ 28 ("Mr. and Mrs. Kim also promised to us to pay for three months rents (sic) for an apartment and the deposit thereof, as part of the termination benefits"), *with* Dkt. 56 (Eun Kyu Kim Decl.) at ¶ 18 ("If they were able to find a

---

[5] The Kims concede that they did not actually have $30,000 cash on hand at the time, as all the proceeds from the sale of the Seal's Motel had bene re-invested through a 1030 exchange.

ORDER- 12

business and commit to the business, we told them we could help them out with paying necessary expenses up to $30,000 and that they should obtain a loan themselves for the remainder. We did not offer them $30,000 in cash[.]"); Dkt. 57 (Chu Hyong Kim) at ¶ 20 ("Our plan was to borrow $30,000 to help Mr. and Mrs. Yu if they found a business to purchase. When we shared the plan with Mrs. Yu, she became very upset that she would not get $30,000 cash immediately. Then, with anger, Mrs. Yu said, 'Then I do not want that small $30,000.'"); Dkt. 57 (Chu Hyong Kim) at ¶ 21 ("I also offered to assist Mr. and Mrs. Yu with getting an apartment, but they rejected that offer, too."). The parties' differing versions of the facts regarding their conversations regarding post-termination benefits were not included in the plaintiffs' request for admissions, which the Court deemed admitted. *See* Dkt. 66.

Accordingly, the Court finds that genuine issues of material fact preclude summary judgment on plaintiffs' claims that they are owed $30,000 cash, the value of three months rent, and a security deposit from defendants. Plaintiffs may attempt to prove their claims at trial, along with their allegation that defendants also promised to purchase them a restaurant worth $300,000.

### III. CONCLUSION

For the reasons discussed above, the Court hereby ORDERS that plaintiffs' motion for partial summary judgment, Dkt. 49, is GRANTED IN PART and DENIED IN PART. The remaining issues to be resolved at time of trial on September 24, 2018 include (1) actual amounts of damages of unpaid overtime wages and/or unpaid minimum wages; (2) whether defendants willfully failed to pay the overtime or minimum wages to defendants (thus extending the statute of limitations to three years, allowing plaintiffs liquidated damages); and (3) whether defendants breached an oral promises to purchase a restaurant in the amount of $300,000 for the plaintiffs,

ORDER- 13

and provide post-termination benefits such as $30,000 cash, three months rent, and a security deposit for a new apartment.

The parties are directed to engage in mediation to attempt to resolve the remaining disputes in this case by no later than **Friday, September 14, 2018**, and should notify the Court promptly of the outcome. The Clerk is directed to send a copy of this Order to counsel for both parties.

DATED this 29th day of August, 2018.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER- 14